# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| REBECCA SARAZIN,<br><br>        Appellant,<br><br>v.<br><br>SHAWN STERNAT,<br><br>        Appellee. | Case No. 16-CV-1117-JPS<br>Bankruptcy Case No. 15-21681<br><br><br>**ORDER** |

On August 19, 2016, this appeal was taken by the appellant Rebecca Sarazin ("Sarazin") from an August 5, 2016 order of the bankruptcy court in bankruptcy case number 15-21681. (Docket #1). The order overruled Sarazin's objection to appellee Shawn Sternat's ("Sternat") homestead exemption and granted Sternat's motion to avoid Sarazin's judicial lien. (Docket #1-2). The appeal is now fully briefed. (Docket #5, #6, and #7). For the reasons explained below, the Court will reverse and remand this matter to the bankruptcy court for further proceedings.

## 1.  JURISDICTION AND STANDARD OF REVIEW

Sarazin timely filed her Notice of Appeal on August 19, 2016, fourteen days after the bankruptcy court's order (Docket #1-2). Bankr. R. 8002(a)(1). This Court has jurisdiction of this appeal because the underlying order conclusively determined the status of Sarazin's claim. *Schaumburg Bank & Trust Co., N.A. v. Alsterda*, 815 F.3d 306, 313 (7th Cir. 2016). The Court reviews the bankruptcy court's findings of fact for clear error and its legal conclusions *de novo*. *In re Marcus-Rehtmeyer*, 784 F.3d 430, 436 (7th Cir. 2015).

2.  **FACTS**

The relevant facts are brief and undisputed.[1] Sternat and Sarazin filed for divorce in state court in 2012. In September 2014 the circuit court, *inter alia*, divided the marital assets and liabilities via a judgment of divorce (the "Divorce Judgment"). (Docket #5-1 at 64-77). The Divorce Judgment granted Sternat the marital home (the "Home"), the primary asset of value between them, and assigned most of the marital debts to Sarazin. *Id.* at 75-76. To remedy this imbalance, the court ordered that Sternat make an equalization payment to Sarazin. *Id.* at 76. The Divorce Judgment described the payment as follows:

> **Equalization**. Based on the above division, the court orders that to equalize the division of assets and debts, [Sternat] is to pay to [Sarazin] an equalization payment of $178,923.00, which judgment is hereby granted in favor of [Sarazin] and against [Sternat].
> The court finds that the IRS, WI Dept. of Revenue, and Loans from Shirley Wiedemeier debts [sic] described above are all marital debts.
> Because the marital residence is the only remaining asset of value, it is hereby ordered to be sold to pay these debts as an equalizing payment from [Sternat] to [Sarazin], as soon as reasonably practical.

*Id.*

Sternat did not sell the Home or make the equalization payment. He instead filed for Chapter 13 bankruptcy protection. Sarazin filed a claim for the equalization payment. She objected to Sternat's attempt to apply the homestead exception to the Home, and Sternat filed a motion to avoid

---

[1]These facts are drawn from the bankruptcy court's memorandum opinion (Docket #5-1 at 53-60) unless otherwise noted.

Sarazin's lien. The bankruptcy court order under review resolved both issues simultaneously. (Docket #1-2).

3.  **ANALYSIS**

Before the bankruptcy court, Sarazin argued that the Divorce Judgment had awarded her a mortgage lien, rather than a judicial lien. (Docket #5-1 at 47-49). The bankruptcy court found that Divorce Judgment was merely a judicial lien, concluding that Sarazin had conceded the point. *Id.* at 55.[2] This is a question of law, which the Court reviews *de novo*, and it concludes that this finding was erroneous. The Divorce Judgment awarded Sarazin a mortgage under Wisconsin law.

This result is dictated by the Wisconsin Court of Appeals opinion in *Klemme*. There, a husband (Robert) and wife (Patricia) were granted a judgment of divorce. *Klemme v. Schoneman*, 477 N.W.2d 77, 77 (Wis. Ct. App. 1991). The judgment incorporated a stipulation concerning division of marital property. *Id.* at 78. With respect to the marital home, it provided as follows:

> [Robert] shall be awarded all right, title and interest in the real property located at 2716 Michigan Avenue, Sheboygan, Wisconsin, [legal description omitted] and [Patricia] shall be divested of all right, title and interest therein subject to the following cash settlement which shall remain as a lien against said property until paid:
> [Robert] shall pay [Patricia] the sum of Five Thousand Eight Hundred ($5,800.00) Dollars payable in the following manner: $1,500.00 to be paid within thirty (30) days of the

---

[2]Sarazin's position is admittedly unclear in her brief submitted to the bankruptcy court. The bankruptcy court cited her "concession" in the first page of her brief, where she argued in favor of a "judicial and equitable lien," without mentioning a mortgage lien. (Docket #5-1 at 38, 55). The vast majority of the brief, and the conclusion, are also silent on the mortgage issue. *See id.* at 38-46, 49-52. Nevertheless, the mortgage issue is mentioned and appears to be properly before the Court (Sternat has not argued, for instance, that the point was waived).

> divorce hearing; $1,500.00 bearing interest at 12% per annum from the date of the divorce hearing to be paid nine (9) months from the date of the hearing; $1,500.00 bearing interest at 12% per annum from the date of the divorce hearing to be paid twelve (12) months from the date of the hearing; $1,300.00 bearing interest at 12% per annum from the date of the divorce hearing to be paid fifteen (15) months from the date of the divorce hearing. Upon payment of the final installment [Patricia] shall execute such documents of title as necessary to terminate her lien against the real estate.

*Id.* at 78 n.2.

Robert failed to pay the entire settlement amount and filed for bankruptcy, listing Patricia's lien as a debt to be discharged. *Id.* He obtained discharge. *Id.* After some further filings in the family court, Patricia attempted to foreclose her lien on the marital home. *Id.* Robert argued that the lien was non-existent as it had been discharged in bankruptcy. The trial court ruled in Patricia's favor, finding that the lien was a mortgage which could not have been discharged. *Id.*

The appellate court upheld that ruling. *Id.* at 81. It relied heavily on the Wisconsin Supreme Court's *Wozniak* decision. *Wozniak* held that divorce judgments could create mortgage, rather than judicial, liens, depending on the characteristics of the judgment. *Wozniak v. Wozniak*, 359 N.W.2d 147, 150 (Wis. 1984). The characteristics to be considered include: 1) whether the subject interest is expressed as a lien, 2) whether the lien is attached to a particular piece of property, 3) whether the lien is meant to guarantee payment of a particular sum of money, 4) whether the underlying debt accrues interest, and 5) whether the debt is due on a particular date. *Klemme*, 477 N.W.2d at 80. *Wozniak* further observed that no particular characteristic is essential, but that the critical inquiry is the intention behind the lien:

> "Whatever be the form of the transaction, if intended as a security for money, it is a mortgage and the right of redemption attaches to it. . . . The purpose of the instrument is the controlling feature under all circumstances. If that is security . . . the instrument is treated as a mortgage and nothing else."

*Id.* at 80-81 (quoting *Wozniak*, 359 N.W.2d at 150).

Applying the *Wozniak* factors, *Klemme* found that the divorce judgment constituted a mortgage lien. *Id.* at 80. Although it did not include language permitting Patricia to foreclose her lien, the omission was not dispositive. *Id.* Instead, *Klemme* noted that "the purpose of Patricia's lien was security for the future payment of Robert's balancing payment of the property division. It is this [intent] aspect of *Wozniak* that truly controls this case." *Id.* at 81. Finally, Robert argued that *Klemme*'s holding would convert every divorce judgment into a mortgage lien. *Id.* The court rejected the notion, holding that a factual, case-by-case analysis is required by *Wozniak. Id.* It closed by stating that "[w]hile [the *Wozniak* analysis] may in most cases result in a declaration of a mortgage lien, neither *Wozniak* nor this case create an ironclad rule." *Id.*

While not identical to *Klemme*, this matter shares more than enough common features for this Court to follow *Klemme*'s guidance. The *Wozniak* factors are present to at least some degree. Though the Divorce Judgment does not use the words "lien" or "mortgage," Sarazin argues that Wisconsin courts emphasize substance over form, citing *Klemme* as a prime example. The Divorce Judgment attaches the lien only to the Home, and no other marital property, thereby distinguishing it from a judicial lien. *Id.* at 80 ("[A] mortgage serves as security for a particular piece of property, while a judgment lien ordinarily is not a lien on any specific real estate of the judgment debtor but is a general lien on all of the debtor's real property.").

Further, the lien is specifically intended to ensure that Sternat sells the home to procure funds for the equalization payment. Though the equalization payment does not accrue interest, the "as soon as reasonably practical" language provides a timeliness component. (Docket #5-1 at 76). Sternat maintains that the Divorce Judgment lacked key mortgage characteristics, namely rights of redemption and/or foreclosure. As noted above, *Klemme* found that such language would favor finding a mortgage lien, but its absence is not conclusive in that regard. *Klemme*, 477 N.W.2d at 80.

The Court finds that these factors weigh in favor of finding a mortgage lien, albeit to a lesser extent than they did in *Klemme*. This case appears to be a few steps removed from *Klemme*; the word "lien" is not used and there is no precise payment date or specific payment arrangements. Nevertheless, this Court concludes, as did *Klemme*, that beyond an analysis of the *Wozniak* characteristics, the intent question determines the outcome. The Divorce Judgment gave the Home to Sternat. It then ordered Sternat to make the equalization payment, and in the same breath directed that the Home be sold to create the funds necessary to effectuate the payment. The intent was that the Home be transferred to Sternat and immediately liquidated to fund the payment. This intention to use the Home as security for the equalization

payment controls, and dictates that the Divorce Judgment created a mortgage lien. *Id.* at 80-81.[3, 4]

## 5. CONCLUSION

Sarazin has a mortgage lien on the Home by virtue of the Divorce Judgment. The bankruptcy court's finding to the contrary was erroneous. The bankruptcy court's decision will, therefore, be reversed, and the matter remanded to it for further proceedings consistent with this opinion. Sarazin suggests that her mortgage lien is nondischargeable, but this Court will leave that and any other bankruptcy-specific determinations to the bankruptcy court.

Accordingly,

**IT IS ORDERED** that the order of the bankruptcy court under review (Docket #1-2) be and the same is hereby **REVERSED**; and

**IT IS FURTHER ORDERED** that this matter is **REMANDED** to the bankruptcy court for further proceedings consistent with this opinion.

---

[3]Sternat may lament, as did Robert, that this ruling will convert all divorce judgment liens into mortgage liens. As noted above, even assuming that many such liens would be viewed as mortgages, *Klemme* foresaw no problems with that result so long as the *Wozniak* analysis was undertaken. *Klemme*, 477 N.W.2d at 81. This Court is not at liberty to disagree with *Klemme*'s interpretation of Wisconsin law.

[4]The Court need not reach the parties' arguments about whether Sternat can avoid any supposed judicial lien. *Klemme*, 477 N.W.2d at 79-80; *see Farrey v. Sanderfoot*, 500 U.S. 291 (1991).

Dated at Milwaukee, Wisconsin, this 18th day of January, 2017.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge